**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BONNIE B. FINKEL, as Chapter 7 | : | |
| Trustee of Avrio Genetics, LLC, | : | |
| Plaintiff/Appellee, | : | |
| | : | |
| v. | : | Civil No.: 2:25-cv-07149-JMG |
| | : | |
| WELLS FARGO BANK, N.A., et al. | : | |
| | : | |
| Defendants/Appellants. | : | |

**MEMORANDUM OPINION**

**Gallagher, J.**                                                                                     **July 29, 2026**

### I.      OVERVIEW

Defendant-Appellant Wells Fargo Bank, N.A. ("Wells Fargo") appeals from the December 2, 2025, Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") denying its Motion to Compel Arbitration and Stay the Adversary Proceeding brought by Plaintiff-Appellee Bonnie B. Finkel, as Chapter 7 Trustee of Avrio Genetics, LLC (the "Trustee"). Bankr. ECF No. 74.[1] In that Order, the Bankruptcy Court held that litigation-conduct waiver was for the court, rather than the arbitrator, to decide and that Wells Fargo waived its contractual right to arbitrate through its litigation conduct. *Id.* at 3–7. For the reasons set forth below, the December 2, 2025, Order will be **AFFIRMED.**

---

[1] Unless otherwise noted, citations to "Bankr. ECF No." refer to the Adversary Proceeding's docket: *In re Avrio Genetics, LLC*, Adv. No. 25-00123-PMM (Bankr. E.D. Pa.). Citations to "Bankr. Case No. 23-10097, ECF No." refer to the main bankruptcy case. Citations to "ECF No." refer to the docket in this appeal.

## II.    BACKGROUND

Avrio Genetics, LLC ("Avrio") maintained deposit accounts with Wells Fargo Bank, N.A. ("Wells Fargo"). Their banking relationship was governed by a Deposit Account Agreement ("DAA") containing a broad arbitration provision for disputes arising from or relating to Avrio's deposit accounts. Bankr. ECF No. 43-1 at 6. The DAA also provides that "[t]he arbitrator(s) will determine whether or not an issue is arbitrable," incorporates the American Arbitration Association ("AAA") Commercial Rules, and includes a non-waiver provision stating that "the institution and maintenance of an action for judicial relief . . . will not constitute a waiver of the right of any party . . . to submit the controversy or claim to arbitration." *Id.* at 7.

On January 13, 2023, Merrow Manufacturing filed an involuntary petition against Avrio under Chapter 7 of the Bankruptcy Code. Bankr. Case No. 23-10097, ECF No. 1. The Bankruptcy Court entered an order for relief on February 9, 2023, and appointed Plaintiff-Appellee Bonnie B. Finkel as Chapter 7 Trustee of Avrio's bankruptcy estate the following day. Bankr. Case No. 23-10097, ECF Nos. 7, 8.

The Trustee commenced this adversary proceeding against Wells Fargo and James M. Brown ("Brown") on March 14, 2025. Bankr. ECF No. 1.[2] The March 14, 2025, Complaint ("Initial Complaint") asserted two claims for aiding and abetting breach of fiduciary duty, one claim for negligence, and one claim for breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 174–207. The implied-covenant claim alleged that Wells Fargo breached duties arising from the "contracts relating to the Avrio savings accounts and operating account." *Id.* ¶¶ 203–06.

---

[2] Brown is a defendant in the adversary proceeding but is not a party to this appeal.

On April 30, 2025, Wells Fargo moved to withdraw the reference to this Court. Bankr. ECF No. 7. The next day, it moved to stay the adversary proceeding pending resolution of that motion, and the Bankruptcy Court granted the stay on May 2, 2025. Bankr. ECF Nos. 9, 11. This Court denied withdrawal without prejudice on June 26, 2025, and the matter returned to the Bankruptcy Court. *Avrio Genetics, LLC v. Wells Fargo Bank, N.A.*, No. 5:25-mc-21, ECF No. 8 (E.D. Pa. June 26, 2025).

On July 29, 2025, Wells Fargo moved to dismiss the Initial Complaint under Federal Rule of Civil Procedure 12(b)(6). Bankr. ECF Nos. 31, 32. The motion challenged the legal sufficiency of the Trustee's claims, but neither invoked the DAA's arbitration provision nor reserved a right to seek arbitration. Bankr. ECF No. 32.

Rather than respond to that motion, the Trustee filed an Amended Complaint on August 19, 2025, as permitted by Rule 15(a). Bankr. ECF No. 41. The Amended Complaint retained the two aiding-and-abetting claims and replaced the negligence and implied-covenant claims with a breach-of-contract claim under the DAA. *Id.*

On September 2, 2025, nearly six months after the adversary proceeding began, Wells Fargo first invoked the DAA's arbitration provision by moving to compel arbitration and stay the adversary proceeding. Bankr. ECF Nos. 43, 44. The Trustee opposed the motion, arguing that Wells Fargo had waived arbitration through its litigation conduct. Bankr. ECF No. 58.

After briefing and oral argument, the Bankruptcy Court denied Wells Fargo's motion on December 2, 2025. Bankr. ECF No. 74. It held that litigation-conduct waiver was for the court to decide and that Wells Fargo had waived its contractual right to arbitrate through its litigation conduct. *Id.* at 3–7. Wells Fargo timely appealed. Bankr. ECF No. 76.

3

### III.    LEGAL STANDARD

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). In reviewing a bankruptcy court's decision, a district court sits as an appellate court, reviewing conclusions of law de novo and findings of fact for clear error. *Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222, 227–28 (3d Cir. 2006) (quoting *Halper v. Halper*, 164 F.3d 830, 835 (3d Cir. 1999)). A factual finding is clearly erroneous only when the reviewing court, after considering the record, is left with a definite and firm conviction that a mistake has been made. *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

Whether a court or an arbitrator decides litigation-conduct waiver is a legal question reviewed de novo, as is the ultimate determination whether a party waived its right to arbitrate. Any subsidiary factual findings are reviewed for clear error. *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (citing *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 450–51 (3d Cir. 2011)).

### IV.    DISCUSSION

This appeal presents two questions: who decides litigation-conduct waiver, and whether Wells Fargo waived its right to arbitrate. The Court addresses each issue in turn.

#### A.  Litigation-Conduct Waiver Was for the Court to Decide

Wells Fargo argues that the Bankruptcy Court lacked authority to determine whether it waived its contractual right to arbitrate through its litigation conduct. ECF No. 5 at 9. According to Wells Fargo, the DAA delegates that issue to the arbitrator because the arbitration agreement broadly covers "all claims," expressly authorizes the arbitrator to decide questions of arbitrability, incorporates the AAA Commercial Rules (the "Rules"), and contains an express non-waiver provision. *Id.* at 10–16.

*Ehleiter v. Grapetree Shores, Inc.*, controls the allocation question. 482 F.3d 207, 219 (3d Cir. 2007). In *Ehleiter,* the Third Circuit held that litigation-conduct waiver is "presumptively an issue for the court, not the arbitrator, to decide." *Id.* Although Wells Fargo characterizes such waiver as an ordinary gateway issue of arbitrability, *Ehleiter* treats litigation-conduct waiver differently. Because it "heavily implicates judicial procedures," determinations of litigation-conduct waiver ordinarily fall within the court's authority to manage its own proceedings. *Id.* at 219–21. Parties may alter that default rule, but only through "clear and unmistakable" evidence of their intent. *Id.* at 222–23.

### 1.  The DAA's Arbitration and Delegation Provisions Are Insufficient

Wells Fargo relies first on the DAA's broad agreement to arbitrate "all claims" between the parties and its statement that "[t]he arbitrator(s) will determine whether or not an issue is arbitrable." Bankr. ECF No. 43-1 at 6–7. Those provisions address the scope of arbitration and ordinary gateway questions of arbitrability. They do not address the distinct question whether a party, after electing to litigate in court, waived its right to arbitrate through that litigation conduct.

*Ehleiter* forecloses Wells Fargo's argument. The agreement there broadly covered claims arising from the parties' relationship and expressly assigned "the issue of arbitrability of any claim or dispute" to the arbitrator. 482 F.3d at 222–23. Even so, the Third Circuit held that the language did not clearly assign litigation-conduct waiver to the arbitrator because that issue arises only after a party has bypassed arbitration and actively litigated in court. *Id.* The DAA's general delegation language is no more specific. It therefore does not displace *Ehleiter*'s default rule.

### 2.  Incorporation of the Rules Does Not Alter That Conclusion

Wells Fargo next relies on the DAA's incorporation of the AAA Commercial Rules, arguing that it independently demonstrates the parties' intent to delegate litigation-conduct waiver to the arbitrator. ECF No. 5 at 11–12.

Wells Fargo cites *Richardson v. Coverall North America, Inc.,* a nonprecedential decision in which the Third Circuit concluded that incorporation of the AAA Rules may constitute "clear and unmistakable" evidence of an intent to delegate ordinary gateway questions of arbitrability. 811 F. App'x 100, 103–04 (3d Cir. 2020). But *Richardson* did not involve litigation-conduct waiver and did not purport to alter *Ehleiter*. Unlike ordinary questions concerning the existence, scope, or validity of an arbitration agreement, litigation-conduct waiver turns on a party's conduct before a court. *Ehleiter*, 482 F.3d at 219–22. *Richardson* therefore does not resolve the issue presented here.

Nor do the Rules themselves specifically assign litigation-conduct waiver to the arbitrator. Their general authorization to decide questions concerning the existence, scope, or validity of an arbitration agreement does not address the consequences of a party's litigation conduct. *See Richardson*, 811 F. App'x at 103–04 (discussing AAA Commercial Rule R-7(a)). A general incorporation of arbitral rules cannot supply the litigation-conduct-specific delegation that *Ehleiter* requires. Accordingly, incorporation of the Rules does not clearly and unmistakably delegate litigation-conduct waiver to the arbitrator.

### 3. The DAA's Non-Waiver Provision Does Not Assign Litigation-Conduct Waiver to the Arbitrator

Wells Fargo principally relies on the DAA's non-waiver provision:

> The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy will not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief.

Bankr. ECF No. 43-1 at 7. Wells Fargo argues that this language supplies the "clear and unmistakable" evidence absent in *Ehleiter* because it expressly addresses waiver of the right to arbitrate. ECF No. 5 at 16.

That argument conflates the substantive effect of litigation conduct with the allocation of authority to determine that effect. The provision identifies conduct that, under specified circumstances, "will not constitute a waiver." It does not state that an arbitrator will decide whether litigation-conduct waiver has occurred. The Court will not infer an allocation of decision-making authority that the parties did not include in the DAA.

Footnote 13 of *Ehleiter* does not advance Wells Fargo's position. There, the Third Circuit expressly declined to decide whether even an agreement that specifically assigns litigation-conduct waiver to an arbitrator would be enforceable. 482 F.3d at 221 n.13. The DAA presents no such question because it does not specifically assign litigation-conduct waiver to the arbitrator. Thus, whatever the answer to the question reserved in footnote 13, the DAA does not approach the explicit delegation contemplated there. *Smith-Bishop v. Experian Information Solutions, Inc.* does not suggest otherwise. There, the agreement expressly assigned to the arbitrator whether either party, "through litigation conduct or otherwise, waived the right to arbitrate." No. 2:24-cv-408, 2025 WL 635329, at *8 (D.N.J. Feb. 27, 2025). The DAA contains no comparable allocation.

Nothing in the DAA's arbitration clause, delegation clause, incorporation of the AAA Rules, or non-waiver provision—whether considered individually or collectively—identifies the arbitrator as the decisionmaker for litigation-conduct waiver. Reviewing the issue de novo, the Court therefore concludes that the Bankruptcy Court properly decided the issue.

### B. Wells Fargo Waived Its Right to Arbitrate

Under *Morgan v. Sundance, Inc.*, arbitration agreements are subject to the same waiver principles as other contracts. 596 U.S. 411, 418–19 (2022). Waiver is the intentional relinquishment or abandonment of a known right; prejudice to the opposing party is not required. *Id.* at 417–19. In the absence of an express waiver, the inquiry is whether the right-holder "acted

7

inconsistently with an intent to assert its right to arbitrate" and thereby "evince[d] a preference for litigation over arbitration." *Valli v. Avis Budget Group, Inc.*, 162 F.4th 396, 407–08 (3d Cir. 2025) (quoting *White v. Samsung Electronics America, Inc.*, 61 F.4th 334, 340 (3d Cir. 2023)). That inquiry depends on the "circumstances and context of each case." *White*, 61 F.4th at 339.

The Court does not treat any single filing, omission, or period of delay as dispositive. Rather, the waiver determination rests on the sequence of Wells Fargo's affirmative litigation choices after the Initial Complaint placed it on notice that the dispute could be arbitrable. Wells Fargo first sought withdrawal of the reference, obtained a stay directed to that request, and then moved to dismiss the Trustee's claims on the merits. Only after the Trustee filed the Amended Complaint did Wells Fargo invoke arbitration. *See supra* Part II. Viewed as a whole, that conduct manifested a preference for litigation over arbitration.

### 1. The Initial Complaint Put Wells Fargo on Notice

Wells Fargo contends that arbitration did not become relevant until the Trustee filed the Amended Complaint because the Initial Complaint asserted tort claims and did not include an express claim for breach of the DAA. ECF No. 5 at 18–19. The allegations in the Initial Complaint establish otherwise.

Although the Initial Complaint did not label a count "breach-of-contract," it alleged that Wells Fargo violated the implied covenant of good faith and fair dealing arising from the "contracts relating to the Avrio savings accounts and operating account." Bankr. ECF No. 1 ¶¶ 203–06. The DAA's arbitration provision broadly covers disputes arising from or relating to those accounts. Bankr. ECF No. 43-1 at 6. The Amended Complaint therefore did not introduce the parties' contractual relationship or the underlying controversy for the first time. Instead, it refined the legal theories arising from the same alleged conduct. Bankr. ECF Nos. 1, 41.

8

*White* requires notice that a claim "could be arbitrable," not certainty that a motion to compel arbitration would ultimately succeed. 61 F.4th at 340. Wells Fargo later invoked the DAA as the basis for its motion to compel. Bankr. ECF Nos. 43, 43-1, 44. The Initial Complaint therefore provided sufficient notice that the dispute could be subject to arbitration.

Indeed, Wells Fargo's own Rule 12(b)(6) motion characterized the parties' relationship as contractual and argued that the Trustee's tort claims were barred because the duties at issue sounded in contract. Bankr. ECF No. 32 at 11–15. That position further confirms that, before the Amended Complaint, Wells Fargo understood that the dispute implicated the parties' contractual banking relationship.

### 2. Wells Fargo's Litigation Choices Were Inconsistent with Preserving Arbitration

Knowledge alone does not establish waiver. The question is whether Wells Fargo, "despite this awareness," acted inconsistently with preserving its right to arbitrate. *White*, 61 F.4th at 340–41. That determination depends on the "circumstances and context of each case." *Id.* at 339 (quoting *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011)). Three aspects of Wells Fargo's litigation conduct are particularly significant: its decision to seek a judicial determination on the merits, its other invocations of the judicial process, and its delay in invoking arbitration.

### a. Wells Fargo Sought a Merits Determination

After the Trustee commenced this adversary proceeding, Wells Fargo did not invoke the DAA's arbitration provision. Instead, after its motion to withdraw the reference was denied, it moved to dismiss the Initial Complaint under Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of the Trustee's claims for failure to state a claim. Bankr. ECF Nos. 31, 32. That choice bears directly on whether Wells Fargo preserved its right to arbitrate.

*White* confirms that conclusion. There, the Third Circuit distinguished routine threshold motion practice from motions seeking a judicial determination on the merits. Although the court observed that "motions to dismiss will not always evince an intent to litigate instead of arbitrate," it concluded that the defendant had "clearly sought to have this case dismissed by a court on the merits" before invoking arbitration. *White*, 61 F.4th at 340 & n.27. Wells Fargo's Rule 12(b)(6) motion falls on the merits side of that distinction.

Wells Fargo contends that its Rule 12(b)(6) motion cannot support waiver because the Bankruptcy Court did not rule on it before the Trustee filed the Amended Complaint. ECF No. 5 at 21. But *White* did not make waiver turn on whether the court ruled on a merits motion; rather, it focused on the party's decision to seek judicial resolution on the merits before invoking arbitration. *See* 61 F.4th at 340 & n.27. The fact that the motion was neither fully briefed nor decided affects its weight, not its relevance. Waiver turns on the right-holder's conduct and the intent objectively manifested by that conduct, not on whether the court ultimately grants the requested relief. *See Morgan*, 596 U.S. at 417; *White*, 61 F.4th at 339–41. The Trustee's subsequent amendment did not erase Wells Fargo's prior litigation choice.

Wells Fargo's reliance on *Button v. Dolgencorp, LLC,* is likewise unpersuasive. No. 22-cv-7028, 2025 WL 642687, at *4 (D.N.J. Feb. 27, 2025). *Button* considered the defendant's undecided motion to dismiss as part of the overall litigation conduct but concluded that the conduct, viewed in context, was insufficient to establish waiver. *Id.* This Court likewise does not treat Wells Fargo's motion as dispositive. Unlike the defendant in *Button*, Wells Fargo also sought withdrawal of the reference, obtained a stay related to that request, remained silent concerning arbitration for nearly six months, and moved to dismiss claims that already implicated the parties' contractual banking relationship. *Button* therefore does not require a different result.

10

### b.  Wells Fargo Otherwise Invoked the Judicial Process

Wells Fargo's litigation conduct was not limited to seeking dismissal on the merits. Before moving to compel arbitration, it moved to withdraw the reference to the district court, briefed that motion, and sought to stay the adversary proceeding pending resolution of the withdrawal request. Bankr. ECF Nos. 7, 8, 9, 11. Although those motions did not seek a merits determination, they invoked the judicial process to obtain relief concerning the forum and management of the litigation.

*White* likewise recognized that non-merits motion practice may be considered as part of the overall waiver analysis, observing that the defendant's participation in "multiple instances of non-merits motion practice" supported the conclusion that it had chosen litigation over arbitration. 61 F.4th at 340–41.

Although discovery has been a feature of many prior waiver cases, neither *Morgan* nor *White* makes discovery a prerequisite to litigation-conduct waiver. *See Morgan*, 596 U.S. at 417–19; *White*, 61 F.4th at 340–41. The inquiry remains whether the party acted inconsistently with preserving its contractual right to arbitrate under the circumstances of the particular case. Viewed alongside Wells Fargo's Rule 12(b)(6) motion and its subsequent delay in invoking arbitration, its non-merits motion practice reinforces the conclusion that it elected to pursue the judicial process before seeking to enforce the arbitration agreement.

The Court does not treat the motion to withdraw the reference as independently establishing a preference for litigation over arbitration, nor does it count the period during which the proceeding was stayed as active litigation. *See* ECF No. 5 at 19–22. Those circumstances reduce the weight of Wells Fargo's non-merits conduct. Still, they do not eliminate its contextual relevance or diminish the significance of Wells Fargo's subsequent, unreserved request for dismissal on the merits.

11

### c. Wells Fargo Delayed Without Preserving Arbitration

Finally, Wells Fargo waited nearly six months after the adversary proceeding commenced to invoke arbitration. Bankr. ECF Nos. 43, 44. Delay alone does not establish waiver, but it remains relevant when considered alongside a party's other litigation conduct. *White*, 61 F.4th at 340–41.

Wells Fargo attributes the timing to the Amended Complaint, contending that it had no basis to invoke the DAA's arbitration provision until the Trustee pleaded an express breach-of-contract claim. ECF No. 5 at 18–19. As discussed above, however, the Initial Complaint already alleged misconduct arising from the parties' contractual banking relationship and asserted that Wells Fargo breached duties imposed by the agreements governing Avrio's deposit accounts. *See supra* Part IV.B.1. Wells Fargo therefore had sufficient notice to invoke or preserve arbitration earlier.

Wells Fargo's reliance on *Valli v. Avis Budget Group, Inc.* does not alter that conclusion. 162 F.4th 396, 411–13 (3d Cir. 2025). There, the defendant promptly preserved arbitration as an affirmative defense, repeatedly raised it during class-certification proceedings, and moved to compel once it was no longer futile. *Id.* Those repeated reservations dispelled any inference that the defendant had chosen litigation over arbitration. *Id.* By contrast, Wells Fargo did not invoke or otherwise preserve arbitration before seeking withdrawal of the reference and dismissal under Rule 12(b)(6), even though the Initial Complaint already implicated the agreements governing Avrio's accounts. *Valli* therefore does not require a different result.

This conclusion does not rest on a technical failure to use particular words, nor does the Court impose a freestanding requirement that every litigant mention arbitration at the first opportunity. Wells Fargo's silence matters because it accompanied affirmative conduct otherwise communicating a choice to pursue judicial relief. In context, the timing reinforces the inference

that Wells Fargo changed forum strategy rather than consistently preserving arbitration. *See Valli*, 162 F.4th at 407–13.

Accepting Wells Fargo's position would permit a party to pursue judicial relief while holding arbitration in reserve until an amended pleading refined the legal theories arising from the same underlying controversy. That result would be inconsistent with *Morgan*'s instruction that arbitration agreements are governed by the same ordinary waiver principles as other contracts and with *White*'s focus on whether the right-holder's litigation choices manifested a preference for litigation over arbitration. *See Morgan*, 596 U.S. at 418–19; *White*, 61 F.4th at 339–41.

### 3.  The Non-Waiver Provision Does Not Compel a Different Result

The DAA provides that "the institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy" will not constitute waiver under the circumstances specified in the provision. Bankr. ECF No. 43-1 at 7. That language must be considered as part of the parties' agreement, but it does not categorically resolve the conduct at issue here.

Wells Fargo argues that any narrower construction would render the word "maintenance" surplusage, particularly because the DAA separately addresses provisional and ancillary remedies. ECF No. 7 at 7–10. But the Court does not construe the non-waiver provision as limited to provisional relief or as protecting only the act of filing an action. Instead, the provision makes clear that, under the circumstances it specifies, merely instituting or maintaining an action does not, by itself, waive the right to arbitrate. Even assuming that "maintenance" includes defending the action and filing motions, the provision does not unambiguously foreclose waiver based on the party's broader course of conduct. It does not state that a party may seek an unreserved merits determination, refrain from invoking or preserving arbitration, and later compel arbitration after the pleadings change. *See A.P.I., Inc. v. Broadway Elec. Serv. Corp.*, 673 F. Supp. 3d 714, 725

13

(W.D. Pa. 2023) ("[C]ompliance with such an exception is not a certain guarantee that waiver may not occur.").

The Court need not define the provision's outer boundary. Even assuming that it protects Wells Fargo's motion to withdraw the reference and its related request for a stay, Wells Fargo had notice that the dispute could be arbitrable, sought dismissal on the merits without invoking or preserving arbitration, and changed course only after the Trustee amended the complaint. *See supra* Parts IV.B.1, IV.B.2.a, IV.B.2.c. The waiver determination, therefore, does not depend on treating any single act as independently dispositive under the provision.

Viewed as a whole, Wells Fargo's conduct manifested a preference for judicial resolution over arbitration. The Court does not hold that an undecided Rule 12(b)(6) motion, limited non-merits motion practice, a six-month delay, or silence alone establishes waiver. Rather, Wells Fargo's affirmative litigation choices—made with notice that the dispute could be arbitrable and without any contemporaneous preservation of arbitration—were inconsistent with maintaining its contractual right to arbitrate. The Bankruptcy Court therefore did not err in denying Wells Fargo's motion to compel arbitration.

## V.    CONCLUSION

Because the DAA does not clearly and unmistakably delegate litigation-conduct waiver to the arbitrator, and Wells Fargo waived its contractual right to arbitrate through its litigation conduct, the Bankruptcy Court's December 2, 2025, Order will be **AFFIRMED.**

An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

14